**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David F. AUBREY,**
**Defendant–Appellant.**

No. 88–2501.

United States Court of Appeals,
Fifth Circuit.

July 18, 1989.

Thomas S. Berg., Asst. Federal Public Defender, Roland E. Dahlin, Federal Public Defender, Houston, Tex., for defendant-appellant.

Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, GARZA and JONES,
Circuit Judges.

GARZA, Circuit Judge:

Appellant David Aubrey appeals from his conviction for mail fraud. He asserts that the evidence presented at trial was insufficient to prove that he possessed the requisite intent to commit that crime. In addition, he argues that the district court did not comply with the requirements of Fed.R. Crim.P. 32(c)(2)(D) during sentencing. On review, we find sufficient evidence to affirm his conviction for mail fraud. We are persuaded, however, that the trial court did not make the findings required by rule 32(c)(2)(D) prior to sentencing.

## Background

Beginning in early 1985, Charles Duran and David Aubrey began acquiring a substantial number of houses in the Houston real estate market. Duran took out advertisements offering to assume government insured home loans at a fee of approximately $500 to the homeowner. He made some of his contacts through these advertisements; other contacts were by word-of-mouth.

Duran represented to some of the prospective sellers that he planned to hold the properties only long enough to sell them to investor groups. He represented to other sellers that he was purchasing their homes on behalf of appellant Aubrey. In each of the fourteen sales identified at trial, the defendants immediately rented out the home, to the former homeowner or to a third party, for an amount less than the mortgage payment. The homes were transferred by warranty deed, some to appellant Aubrey and some to Duran. All of the property thus acquired was insured either by the Veteran's Administration or the Federal Housing Administration. Interestingly, transfer of title and assumption of the mortgages required neither lender nor government approval because the policy of the federal insurance agencies at that time permitted the loans to be freely assumable.

None of the homes acquired by these two men were in default at the time of the transaction. However, because of the depressed and decaying real estate market then extant in Houston, many of the homes had lost their value at a time when non-conventional financing and variable-rate mortgages were resulting in increased loan payments. The assumption of the property by Duran and Aubrey provided at least a temporary solution for some of the homeowners since it permitted them to avoid an inevitable default and foreclosure, or so they believed.

Appellant's lessees usually paid their rent using envelopes that were preaddressed to Aubrey. This was the basis for the government's mail fraud count against him. Duran apparently applied at least some of the rents toward payment on the outstanding mortgages; appellant used virtually all of the rental income for his personal expenses. Aubrey had never intended to make mortage payments; he claimed that his plan was to sell the houses immediately. Although Duran resold a few of his properties, Aubrey was unable to sell any of them. Two auctions, held by Aubrey, produced no results. Both men eventually defaulted on all of the mortgages they had assumed. This resulted in a loss alleged to exceed $3 million paid to mortgage companies by the government on the VA and FHA insured loans.

Both men were indicted on various counts of devising and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretexts. They were also indicted on various counts of mail fraud. At trial, the district court found that Duran had made a good faith effort to make mortgage payments. He also had no prior criminal record. Several character witnesses vouched for his integrity and his involvement in church activities. The court found him not guilty of all charges.

Aubrey, on the other hand, was a convicted felon with a prior mail fraud violation. He acknowledged that he never had

any intention to make mortgage payments, although he claimed that he had no intent to defraud; he merely hoped to resell the properties quickly. The court found him guilty of mail fraud and equity skimming. Following Aubrey's conviction, the government introduced a presentence report ("PSI") wherein it was alleged that his activities resulted in a $3 million loss to the government through its insuring of the foreclosed properties. This figure placed appellant in category VI under the Parole Commission guidelines, thus requiring him to serve fifty-two to sixty-four months in prison. Aubrey disputed this finding, claiming that the loss attributable to him should be limited to the gain he received through his actions, approximately $59,000. This figure would place him in category IV, making him eligible for parole in twenty to twenty-six months.

The district court agreed that the loss figure was inaccurate. It placed the loss attributable to Aubrey at $1 million. The court concluded that his liability should extend only to those houses in which he placed renters, not to all the properties that eventually went into foreclosure. Aubrey continued to object and the court ultimately directed the probation officer to prepare a supplemental report and to disclose it to Aubrey's counsel.

### Discussion

Appellant presents two issues for our consideration. First, he claims that the government's evidence was insufficient to prove that he violated the mail fraud statute. Second, he urges that the district court failed to comply with Fed.R.Crim.P. 32(c)(3)(D) and that such a failure requires resentencing. We examine each of these issues in turn.

As a preliminary matter, we note that the standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence presented in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

To obtain a conviction for mail fraud the prosecution must prove: (1) the existence of a scheme or artiface to defraud that (2) involves the use of the mails for the purpose of executing the scheme, and (3) the specific intent to commit fraud. 18 U.S.C. § 1341; *United States v. Fagan*, 821 F.2d 1002, 1008 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). The scheme to defraud must also be aimed at the victim's property rights. *McNally v. United States*, 483 U.S. 350, 356–60, 107 S.Ct. 2875, 2880–81, 97 L.Ed.2d 292 (1987).

Aubrey claims that the government was unable to prove a specific intent to defraud. He asserts that neither he nor Duran ever represented to any of the homeowners listed in the mail-fraud indictment that they (the homeowners) would no longer be ultimately responsible for the mortgages on their homes once the properties had been transferred. Indeed, Aubrey points out, one of the homeowners was actually informed that his credit rating might be affected "if things didn't go well."

Proof of intent may arise by inference from all of the facts and circumstances surrounding a transaction. *United States v. O'Keefe*, 722 F.2d 1175, 1181 (5th Cir. 1983). We will not lightly overturn a determination by the trier of fact that the accused possessed the requisite intent. *Id.* The circumstances that support the finding of Aubrey's intent to defraud include: (1) his purchase of a large number of federally insured homes at a time when he had no capital to do so, (2) his personal use of virtually all of the rents paid to him by his lessees, and (3) his failure to make mortgage payments. Aubrey does not challenge the sufficiency of this evidence to establish that he violated the equity skimming statute, 12 U.S.C. § 1709–2, an offense that requires proof of an intent to defraud.[1] Viewing the evidence in the

---

1. At oral argument, counsel for Aubrey abandoned his claim that the trial court erroneously

light most favorable to the prosecution, we conclude that a rational trier of fact could have found that appellant in this case possessed an intent to defraud the homeowners, the government or both. The evidence was thus sufficient to satisfy the requisite proof of intent to defraud under the mail fraud statute.

■ Although appellant does not assign error to the finding of the other elements of mail fraud, we note in passing that the existence of the scheme or artifice to defraud was clear from appellant's continuous purchase of houses in order to pocket the rents. His distribution of self-addressed envelopes to the lessees for the forwarding of their rent checks satisfies the mailing element of 18 U.S.C. § 1341. Aubrey's second assignment of error has more merit than his first.

■ Appellant argues that the trial court did not comply with Fed.R.Crim.P. 32(c)(3)(D) when it passed sentence upon him. The rule provides, in relevant part:

If the comments of the defendant and the defendant's counsel ... allege any factual inaccuracy in the presentence report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. Fed.R.Crim.P. 32(c)(3)(D).

Aubrey points out that the presentence report estimated that the government lost "in excess of $3 million as a result of defendant's latest scheme." The $3 million figure placed appellant in a Category VI under the Parole Commission guidelines, 28 C.F.R. § 2.20 (1988). Category VI requires a prison term of fifty-two to sixty-four months. Appellant asserts that he challenged the figure estimated by the government and contended, at his sentencing hearing, that the loss should be limited to the $59,000 that he actually collected in rents. This would place him in a Category IV requiring a prison term of twenty to twenty-six months. He argues that, given

this challenge to the factual accuracy of the PSI, the court was required by rule 32(c)(3)(D) to make a finding as to the allegation (it being clear that the matter *would* be taken into account in sentencing). We agree.

Our review of the record of appellant's sentencing hearing reveals that the district judge found the government's figure of $3 million inflated. However, the judge made no specific finding regarding the loss; rather, he mused that the figure "had to be well over a million dollars." He thus tentatively set the loss at one million dollars and ordered the investigating agent in the probation office to submit as a supplement to the PSI a statement providing the source of the information. The record on appeal does not include this supplement and appellant maintains that no hearing was held to resolve the matter.

The finding, such as it is, by the district court regarding Aubrey's challenge to the PSI does not comport with the requirements of Rule 32(c)(3)(D). Given the disparity between the government's figure and appellant's, it was not sufficient for the court simply to guess at a figure somewhere between the two and then characterize that as a "finding" as to the matter controverted.

For the reasons stated above, we AFFIRM the district court's finding of guilt under the mail fraud statute. However, we VACATE the judgment with respect to appellant's sentence and REMAND to the district court for an accurate finding as to the loss attributable to defendant's activities.

found him guilty of equity skimming.