UNITED STATES of America, Plaintiff–Appellee,

v.

Nicholas BACHYNSKY, Defendant–Appellant.

No. 89–2742.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1991.

Richard B. Kuniansky, Robert I. White, Chamberlain, Hrdlicka, White, Johnson, & Williams, Houston, Tex., for defendant-appellant.

Michael Shelby, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S.

Atty., Houston, Tex., Thomas M. Gannon, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

## ON REMAND FROM THE EN BANC COURT

Before GARWOOD and WIENER, Circuit Judges, and VELA, District Judge.*

WIENER, Circuit Judge:

Dr. Bachynsky is before this panel a second time, now on remand from an en banc decision of this court. *United States v. Bachynsky*, 934 F.2d 1349 (5th Cir.1991) (*Bachynsky en banc*). The original opinion of this panel reversed the judgment of the district court, vacated the defendant's sentence and remanded the case to permit Dr. Bachynsky to plead anew. We did so because under this circuit's prior jurisprudence the district court's failure to mention and explain the effect of supervised release was deemed a total failure to address a core concern of Fed.R.Crim.P. 11(c), mandating such a result. *United States v. Bachynsky*, 934 F.2d 561 (5th Cir.1991) (*Bachynsky I*). Upon reconsideration en banc, this court vacated its earlier decision and held that such an omission was only a partial failure to address a Rule 11 core concern and was thus subject to the harmless error provisions of Rule 11(h). Finding only harmless error in the district court's partial failure, the en banc court remanded the case to this panel for consideration of those of Dr. Bachynsky's assignments of error which this panel did not reach in our original opinion in *Bachynsky I*.

* District Judge of the Southern District of Texas, sitting by designation.

1. Rule 11(c)(3) provides:

   (c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

   . . . .

   (3) that the defendant has the right to plead not guilty or to persist in that plea if it has

## I.

The facts of this case are fully developed in the original panel opinion, and we adopt them as set out there. *Bachynsky I*, 924 F.2d at 563–64.

## II.

In his original brief, Bachynsky asserted numerous points of error concerning the district court's (a) acceptance of his guilty plea and (b) imposition of his sentence. We now address each of those categories of alleged error.

### A.

### *The Guilty Plea*

Bachynsky argues that because the district court did not give him all of the advice or information required by various provisions of Fed.R.Crim.P. 11 before accepting his guilty plea, it should be vacated and he should be allowed to plead anew. We will address in turn each point of error alleged to have tainted the defendant's guilty plea.

1. Violation of Rule 11(c)(3) [1]

■ Dr. Bachynsky posits that the district court violated Rule 11(c)(3) by failing to advise him that he (1) had the right to plead not guilty and persist in that plea, and (2) could not be compelled to incriminate himself by pleading guilty. After reviewing the record of the Rule 11 plea hearing, we find that any omissions by the district court were at most, partial failures to address Rule 11 requirements, and that Bachynsky's substantial rights were not prejudiced by the errors. *Cf. United States v. Guichard*, 779 F.2d 1139, 1142

already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination.

(5th Cir.1986) (failure to mention defendant's right to confront witnesses was not an entire failure to address a core concern of Rule 11). Therefore, the court's omissions were harmless.

First, the plea agreement signed by Dr. Bachynsky stated expressly that he was entitled to plead not guilty and go to trial. At the Rule 11 hearing, Dr. Bachynsky answered affirmatively when the district court asked whether he understood that he had the right to go to trial before a jury and that if he persisted in a guilty plea, he gave up that right. At that time, the court also informed Dr. Bachynsky that by pleading guilty he waived the right to decline to testify in this case.

Although we agree that the district court did not express the talismanic words that Dr. Bachynsky was entitled to plead not guilty and that he could not be compelled to incriminate himself, such admonitions were implicit in the court's discussion of the rights that Dr. Bachynsky would lose if he pled guilty. A verbatim reading of Rule 11(c)(3) to the defendant is not required as long as the defendant understands the rights he forfeits by pleading guilty. *See United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979) (en banc). When deciding if a partial failure to comply with a provision of Rule 11 requires reversal, we look to whether the court sufficiently determined that the defendant understood the direct consequences of his plea, including his waiver of certain constitutional rights. *United States v. Caston*, 615 F.2d 1111, 1116 (5th Cir.1980). The record in this case supports the district court's determination that Dr. Bachynsky understood which constitutional rights he retained and which he waived by pleading guilty.

Furthermore, Dr. Bachynsky never explains to this court how he was prejudiced by the district court's failure to advise him on these points. Generally, we hesitate to find that a defendant's substantial rights were affected when he fails to specify just what prejudice he has suffered as a result of the alleged infringement of a right. *See Caston*, 615 F.2d at 1115–16 (where defendant rests on "per se" violation of Rule 11 and does not claim any prejudice by the error, "the error is harmless beyond a reasonable doubt and does not merit reversal"). Given Dr. Bachynsky's extensive education, professional background and capable trial representation, as well as the contents of the plea agreement and the protracted negotiations with the government which led to the confection of that agreement,[2] any failure by the judge to encant the exact language of the rule is, at most, harmless error, if it be error at all, *see Dayton*, 604 F.2d at 938, particularly in light of the doctor's failure to point to any prejudice produced by such omission.

### 2. Violation of Rule 11(c)(5) [3]

■ Dr. Bachynsky also complains that the district court failed to advise him that he might be questioned about his offense, under penalty of perjury, as required by Rule 11(c)(5). He cites *United States v. Almaguer*, 620 F.2d 557, 559 (5th Cir.1980), *cert. denied*, 452 U.S. 907, 101 S.Ct. 3034, 69 L.Ed.2d 408 (1981), for the proposition that such an error requires automatic reversal. But Dr. Bachynsky misinterprets both *Almaguer* and Rule 11(c)(5).

In *Almaguer*, the trial court's only mention of perjury came during its discussion with the defendant about the consequences he faced if he perjured himself *at trial*.

---

**2.** *See Bachynsky I,* 924 F.2d at 564 & n. 3 (relating the facts surrounding the plea negotiations).

**3.** Rule 11(c)(5) reads:
(c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ...

.    .    .    .    .

(5) if the court intends to question the defendant under oath, on the record, and in the

presence of counsel, about the offense to which the defendant had pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

The defendant in that case could have misconstrued the court's warning to mean that any answer he gave *at the plea hearing* could not be subject to a prosecution for perjury. That was not the situation in the instant case. In the court's colloquy with Dr. Bachynsky, he was specifically warned that any answers he gave during the plea hearing could result in further prosecution for perjury if his answers should be found to be false. Moreover, this court vacated the holding in *Almaguer,* relying instead on the holding in *Caston,* 615 F.2d at 1116, that automatic reversal was not warranted for Rule 11(c)(5) violations. We found instead that the failure of the district court to admonish Almaguer concerning the consequences of answering falsely at the hearing was harmless error because the defendant did not demonstrate any prejudice resulting from that omission. *United States v. Almaguer,* 632 F.2d 1265, 1266–67 (5th Cir.1981) (panel rehearing). Furthermore, the plain wording of Rule 11(c)(5) only requires that the court warn the defendant that *if* he is questioned about the offense at the plea hearing, any false answers he gives may subject him to a prosecution for perjury.

In the instant case, the court never questioned Dr. Bachynsky about any of the offenses to which he ultimately pleaded guilty, and Dr. Bachynsky has never been prosecuted for perjury or making a false statement. Absent any questioning by the court about the offenses, and absent prosecution of Dr. Bachynsky for perjury, the district court's alleged violation of Rule 11(c)(5) could not have prejudiced Dr. Bachynsky. *Accord Id.; Caston,* 615 F.2d at 1116. We find that the district court did not fail to address the requirements of Rule 11(c)(5), but that even if it had, such failure would have been harmless.

### 3. The "Secret Plea Agreement"

■ Dr. Bachynsky claims that he was induced to plead guilty by secret prosecutorial promises of leniency toward members of his family. He argues that this secret agreement was concealed from the court in violation of Rule 11(e)(2), and that, therefore, the district court was prevented from making an informed decision under Rule 11(d) concerning the voluntariness of Dr. Bachynsky's plea.

Before we may consider the merits of a defendant's claim on direct appeal, that claim must have been presented to the district court. *See United States v. Corbett,* 742 F.2d 173, 178 (5th Cir.1984) (defendant could not raise issue for first time on appeal that unfulfilled prosecutorial promise induced defendant to plead guilty); *United States v. Hay,* 685 F.2d 919, 921 (5th Cir. 1982). Although the government does not specifically deny that such a promise was made, it contends that there is no evidence in the record to show that Dr. Bachynsky ever raised this issue in the district court. After reviewing the entire record, paying particular attention to the transcripts of Dr. Bachynsky's plea hearing and sentencing hearing, we agree with the government. Dr. Bachynsky failed adequately to present this claim to the district court.

First, the plea agreement signed by Dr. Bachynsky states that his guilty plea was voluntarily given and that he had "received no promises of leniency, or of any other nature than these made a part of this pleading" from any person to induce him to plead guilty. Second, at the plea hearing, the court asked Dr. Bachynsky if there were any promises or assurances made, in addition to those contained in the written plea agreement, that induced him to plead guilty. Under oath Dr. Bachynsky answered in the negative. The court later asked Dr. Bachynsky if there were any promises of leniency toward him, or promise of any specific sentence or any other kind of inducement to plead guilty, and again, Dr. Bachynsky replied negatively.

Finally, at sentencing Dr. Bachynsky was presented with yet another opportunity to reveal the facts surrounding the alleged "secret package deal." Dr. Bachynsky would have us believe that the record of the sentencing hearing establishes conclusively that the district court was aware of the existence of a secret side agreement. But after a painstaking study of the transcript, we cannot find any language indicat-

ing that Dr. Bachynsky actually told the district court of this supposed agreement. Neither can we find any statement by the district court indicating it was aware that such an agreement might have existed. All we find are statements which, at best, may be characterized as hints or innuendo that there were other factors not necessarily contained in the plea agreement that Dr. Bachynsky may have considered when entering his guilty plea.

What Dr. Bachynsky actually said during his discussion with the court was that

> there were reasons beyond what were in the plea agreement and in the plea. And your Honor was correct, my wife and son were co-defendants in that case. And th[ere] was a conflict of wanting to go to trial versus not wanting to go to trial. That conflict extends to my attorney. And during the plea hearing itself, I told [my attorney] that I did not want to proceed with the plea. His response was ... I'm not going to say that, tell your Honor yourself. I didn't disclose those factors and considerations of the fact that I—that there were some [meritorious] defenses based on some of the things we discussed and others. And I just want to point out that there's just something fundamentally unfair, I guess in my own mind, about a father's concern for his son and plea agreement and everything else ... and I just want to [implore] your Honor to take those factors into consideration. And I was really hoping somehow I'd get a chance to go to trial without jeopardizing my family.

Dr. Bachynsky never elaborated on what the "other" reasons beyond the plea agreement were or how they affected his plea. These vague, cryptic statements are as close as he ever got to revealing the purported facts surrounding the "secret agreement" that the government allegedly made with him to make certain he persisted in his plea of guilty. His meaning, if in fact he was attempting to reveal the existence of the alleged agreement, is further obscured by the fact that this entire discussion took place in the context of Dr. Bachynsky's claim concerning a possible conflict of interest with his attorney. Moreover, at sentencing, Dr. Bachynsky's attorney never alleged or even mentioned to the trial court that the doctor's plea should be vacated for having been induced by prosecutorial promises of leniency toward other family members. The statements Dr. Bachynsky made to the district court were wholly inadequate to put that court on notice that there *might* have been a collateral agreement that *might* have induced him to plead guilty.[4]

Because Bachynsky failed to present this claim to the district court, we must review the propriety of the plea against the only record before us: the transcripts of the Rule 11 and the sentencing hearings. As we have already stated, a review of the record reveals no probative evidence of any collateral promise made by the government. Dr. Bachynsky's testimony under oath at the Rule 11 hearing, together with the contents of the written plea agreement he signed, negate the existence of any such promise. *Cf. United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir.1979) (testimony at plea hearing that no promises were made outside plea agreement, while not conclusive, places heavy burden on defendant to overcome presumption of verity afforded sworn statements). In light of the dearth of evidence of any other coercive agreement that may have induced Dr. Bachynsky to plead guilty, we find that the district court did not err in determining that Dr. Bachynsky's guilty plea was voluntary. *See Corbett*, 742 F.2d at 177.

### 4. Violation of Rule 11(e)(1)(C)[5]

■ Dr. Bachynsky insists he was led to believe that under his plea agreement the

---

**4.** Bachynsky filed a pro se motion for remand for a limited evidentiary hearing to establish the facts surrounding the alleged secret package deal. But because he failed to raise this issue below, the remaining vehicle for raising this claim is a motion to the district court for post-conviction relief under 28 U.S.C. § 2255. *See Corbett*, 742 F.2d at 178 n. 11.

**5.** Bachynsky confuses the issue of whether his plea agreement falls under Rule 11(e)(1)(B) or (e)(1)(C) and whether 11(e)(4) allows him to

court was bound to sentence him within the guidelines range, and that if the court rejected that provision he was entitled to withdraw his plea. Dr. Bachynsky's claim, however, is based on his erroneous and self-serving reading of the record in this case.

■ The plea agreement stated that *neither party* would request a particular sentence or recommend departure from the sentencing guidelines. The record reflects that the government kept its part of the bargain by neither recommending a specific sentence nor requesting a departure. Admittedly, the district court's explanation of the conditions under which Dr. Bachynsky could withdraw his guilty plea was at times confusing; still, the court was clear that only if it considered matters for sentencing purposes that were specifically excluded from consideration under the plea agreement could Dr. Bachynsky withdraw his plea.

Dr. Bachynsky attempts to twist that explanation into an argument that the provisions in the plea agreement binding each side not to make a specific sentencing recommendation constituted an implicit assurance that the court would sentence him within the guidelines range and not depart. But he ignores the fact that the district court took great pains to articulate that the court was not bound by any agreement as to a particular sentence. In fact, Dr. Bachynsky conceded this point at sentencing when he stated that "[y]our Honor certainly admonished me that you had the right to give me any sentence you chose."

Dr. Bachynsky's real complaint is that the court imposed a sentence in excess of the maximum that the doctor's "guidelines expert" predicted the court would impose. But, the district court certainly never mislead Bachynsky by telling him or even implying that it would impose a particular guidelines sentence or that it would not depart upward. Consequently, the court was under no obligation to allow Dr. Bachynsky to withdraw his plea if the court departed from the sentencing guidelines range because Dr. Bachynsky could not have had a reasonable expectation of receiving any particular sentence. *Cf. Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir.1989) (defendant's " 'mere understanding' that he would receive a lesser sentence in exchange for guilty plea will not abrogate that plea should a heavier sentence be imposed."). Moreover, the district court complied precisely with the Rule 11(e)(1)(C) portion of the plea agreement that put restrictions on the evidence the court could consider for sentencing purposes. Although Dr. Bachynsky may have been expecting a lighter sentence, that erroneous expectation was of his own creation (or that of his so-called "guidelines expert") and not a result of being misled or underinformed by the court. As the district court properly accepted the plea agreement and fully complied with its terms, the doctor had no basis to withdraw

---

withdraw his plea under these subsections. Rule 11(e)(1) provides that:

   (e) Plea Agreement Procedure.
     (1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussion with a view toward reaching an agreement that, upon entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
     (A) move for dismissal of other charges; or
     (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or
     (C) agree that a specific sentence is the appropriate disposition in the case.

Rule 11(e)(4) permits a defendant to withdraw a plea made under (e)(1)(C) if the court rejects the sentence agreed upon by the parties. Fed.R.Crim.P. 11(e)(4). The Rule 11(e)(4) requirements, however, are not applicable to 11(e)(1)(B) agreements. *See United States v. Babineau*, 795 F.2d 518, 520 (5th Cir.1986). Therefore, even had the government made a sentencing recommendation in this case, the court was not "bound" by it and Bachynsky would have had no right to withdraw his plea under 11(e)(4). Furthermore, while we do not necessarily agree that the plea agreement came under 11(e)(1)(C), even if it did, the court complied with the restrictive provisions of the plea agreement and did not consider the money laundering or bankruptcy fraud charges when sentencing Bachynsky.

his plea. *See United States v. DeCicco,* 899 F.2d 1531, 1534–35 (7th Cir.1990); *United States v. Babineau,* 795 F.2d 518, 520 (5th Cir.1986).

5. The Factual Basis for the Plea and Forfeiture

■ Dr. Bachynsky avers that at the Rule 11 hearing the prosecution failed to establish an adequate basis for the guilty plea or the forfeiture of property. The district court, before accepting a guilty plea, must conduct an inquiry sufficient to satisfy itself that there is an adequate factual basis for the plea. Fed.R.Crim.P. 11(f). "To support a guilty plea the prosecutor must present evidence *to the subjective satisfaction of the district court* which indicates that a defendant actually committed the offense to which he is pleading guilty." *Guichard,* 779 F.2d at 1146 (quoting *United States v. Antone,* 753 F.2d 1301, 1305 (5th Cir.1985)) (emphasis added).

Dr. Bachynsky asserts that the government failed to show that he either conducted the enterprise or participated in its conduct, directly or indirectly, through a pattern of racketeering activity. But after combing the record of the plea hearing we find that the doctor's claim is without merit and refuted by the testimony of FBI Agent Charles Harvel, by the plea agreement, by the indictment, and by Dr. Bachynsky's own responses at that hearing.

Fairly read, the government's proffer at the instant plea hearing establishes that Dr. Bachynsky controlled the enterprise, that the clinics he controlled used the mails to obtain money from insurance companies and the Department of Defense under false or fraudulent pretenses, and that Dr. Bachynsky had concealed income from the IRS. When this record is read in pari materia with the indictment, the only reasonable conclusion is that a factual basis exists sufficient to support the finding that Dr. Bachynsky conducted his enterprise through a pattern of racketeering. *Cf. United States v. Boatright,* 588 F.2d 471, 475 (5th Cir.1979) (when sufficiently specific, indictment alone can be used as the sole factual basis for a defendant's guilty plea).

Therefore, the district court did not abuse its broad discretion in determining that a factual basis existed for Dr. Bachynsky's plea. *See, e.g., United States v. Lumpkins,* 845 F.2d 1444, 1451 (7th Cir.1988).

■ As an issue of first impression in this circuit, Dr. Bachynsky argues that Rule 11(f) applies equally to orders of forfeiture and, that in this case, the government failed to establish a factual basis for forfeiture. After considering both sides of this argument, we agree with the eleventh circuit that "the policy factors supporting the requirement of a factual basis for guilt ... are far more compelling than those underlying the need of a factual basis for property forfeiture," *United States v. Crumbley,* 872 F.2d 975, 977 (11th Cir. 1989). We find therefore that the requirement of Rule 11(f) that the factual basis for a plea be established at the plea hearing does not apply to an order of forfeiture. Instead, "we will uphold the district court's order of forfeiture if the entire record which was before the court provided a factual basis for the forfeiture." *Id.*

■ But, argues Dr. Bachynsky, even under *Crumbley,* the order of forfeiture must nevertheless be set aside because the record as a whole does not establish an adequate basis for the forfeiture. We disagree. First, the indictment alleges that all of the properties listed were acquired or maintained through Dr. Bachynsky's racketeering activities, and goes on to list how the various properties were derived from the proceeds of those activities. Second, the plea agreement lists all of the items of real and personal property that Dr. Bachynsky agreed to forfeit. Third, at the plea hearing, the court asked the defendant if he understood that he was subject to forfeiture of all the property listed in the agreement, and he answered affirmatively.

While we acknowledge that "the mere fact that the defendant has agreed that an item is forfeitable in a plea agreement does not make it so," *see United States v. Reckmeyer,* 786 F.2d 1216, 1222 (4th Cir.1986), we also recognize that a defendant's affirmative answers to the court's questions at the plea hearing, while not an absolute

bar, impose a "heavy burden" to overcome, see, e.g., Nuckols, 606 F.2d at 569. Moreover, we note that in all of the voluminous objections to the PSI filed by Dr. Bachynsky, he never objected to the forfeiture provisions in the plea agreement; neither did he object to the forfeiture during his sentencing hearing. Significantly, Dr. Bachynsky has never provided any evidence at all to contradict the government's assertion that all of the property listed was acquired or maintained through his racketeering activities. We therefore uphold the district court's order because we find that the record as a whole provides an adequate factual basis to support the forfeiture.

### B.

### The Sentence

Dr. Bachynsky advances three grounds for vacating his sentence: (1) that the district court's departure from the sentencing guidelines violated his due process rights because the departure was based on disputed facts to which Dr. Bachynsky did not have a meaningful opportunity to respond; (2) the court made an inadequate finding concerning the amount of the loss occasioned by Dr. Bachynsky's fraud; and (3) the district court erred in enhancing Dr. Bachynsky's offense level based on the vulnerability of the victims. For the reasons stated below, we find Bachynsky's arguments without merit and affirm his sentence.

### 1. Due Process

In order to address Dr. Bachynsky's arguments properly, a brief review of the events leading up to his sentencing is necessary. Dr. Bachynsky's sentencing was first set for April 14. He requested a two week postponement in order to "accumulate the information necessary to provide to the probation office [ ] full and complete records and data regarding the Defendant's background and financial information...." On April 18, the court continued Dr. Bachynsky's sentencing until June 2. On June 12, after sentencing had been reset for June 16, Dr. Bachynsky was granted another 30 day continuance. Sentencing was finally held on July 13.

The initial PSI was submitted to the parties around June 5. In it the probation officer stated that the amount of money involved in the mail fraud scheme totalled approximately $37 million. The initial PSI did not recommend departure, but did recommend an adjusted offense level of 36 based on all of Dr. Bachynsky's relevant conduct, including conduct specifically excluded by the plea agreement. On July 6 the probation office filed an addendum to the PSI which recalculated Dr. Bachynsky's sentence to exclude the conduct specifically exempted from consideration by the plea agreement. In that amended PSI, the probation officer also recommended an upward departure from the sentencing guidelines of five levels based on the excessive amount of loss occasioned by the fraud. The amount of loss was calculated to be $37 million. The probation officer stated that this amount was derived from information received from the prosecution, which in turn was derived from estimations and speculations made by Dr. Bachynsky himself or gleaned from his financial records. The probation officer also stated that he suspected that the $37 million figure was an underestimation of the total fraud.

On July 10, only three days before sentencing, Dr. Bachynsky submitted voluminous objections to the PSI. Included was Dr. Bachynsky's objection to the probation officer's determination that $37 million was the amount involved in the scheme. Dr. Bachynsky's objection asserted that the true amount at issue was only $41,900 as contemplated by the indictment. No affidavits or other evidence was submitted to support Dr. Bachynsky's contention. The prosecution responded to Dr. Bachynsky's objections by filing an affidavit from FBI Agent Jacobs which explained in detail the government's calculation of the $37 million figure. Due to the defendant's delay in submitting his objections to the PSI, the government's response to Dr. Bachynsky's objections were submitted less than 24 hours before the sentencing hearing.

At sentencing, Dr. Bachynsky's attorney objected to the grounds for departure and requested that sentencing be postponed yet again to give him a meaningful opportunity to rebut the facts supporting the government's $37 million figure. Defense counsel also objected to the prosecution's "11th hour" submission of the Jacobs affidavit. The district court refused to grant a continuance, stating that the defendant had had ample time within which to respond to the $37 million amount presented in the PSI. The court also noted that the only reason the prosecution's submission was so late was because the defense had not filed its objections until three days prior to sentencing, even though it had received the PSI approximately five weeks earlier. The court then noted that the matters detailed in the Jacobs affidavit had been before the court the entire time. The district court then accepted the amended PSI's recommendation and departed upward five levels.

Dr. Bachynsky advances two arguments to support the contention that his due process rights were violated by the district court's upward departure from the sentencing guidelines: first, that the prosecution's "11th hour" submission of Agent Jacobs' affidavit robbed the defense of an opportunity to refute the government's facts supporting the $37 million figure, as required by Sentencing Guideline § 6A1.3; [6] and, second, that the district court failed to notify the defendant, as required by Fed. R.Crim.P. 32, that it was contemplating departure based on this disputed amount.

The first argument is refuted by the district court's correct observation that the only reason the government's submission was at the "11th hour" was the defendant's failure to submit his objections to the PSI in a timely manner. Dr. Bachynsky's attorney had the original PSI for approximately five weeks prior to the sentencing hearing, but failed to submit any objections until three days before his client was due to be sentenced. As the delay was caused

by Dr. Bachynsky's own inaction he cannot now claim prejudice. *See United States v. Taylor*, 814 F.2d 172, 174 (5th Cir.1987).

More importantly, we agree with the district court's conclusion that Bachynsky had ample time within which to refute the accuracy of the $37 million figure but failed to do so. As already observed, Dr. Bachynsky was granted repeated extensions—from April 14 to July 13—in which to provide financial information to the probation office and the court. For over a month prior to his sentencing, the doctor's attorney was aware of the probation officer's contention that the amount attributed to the mail fraud scheme was approximately $37 million. Despite Dr. Bachynsky's protestations to the contrary, the significance of the disputed figure had to have been obvious to his attorney ever since he received a copy of the initial PSI because that amount had been used to calculate the base level of the offense under Sentencing Guideline § 2F1.1. When Dr. Bachynsky submitted his objections to the initial PSI he expressly objected to the $37 million figure, but he never provided controverting evidence. Instead, he relied on conclusory statements that the figure used by the probation officer was erroneous and that the figure listed in the indictment was the accurate measure of the fraud. Neither in his written objections nor at sentencing did the doctor ever give any indication of what additional evidence he might have produced to support his argument that the $37 million amount was incorrect.

In as much as Dr. Bachynsky had been aware for several weeks before sentencing that the $37 million amount was at issue *and* that he failed to produce any evidence whatsoever to support his contention that the figure was incorrect, it is reasonable to infer that he understood the amount's significance to his sentencing and that he had ample opportunity to respond to the probation officer's conclusion. *See Taylor*, 814 F.2d at 174; *see also United States v.*

---

**6.** Sentencing Guideline 6A1.3(a) provides in part that
When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor....

*Walker,* 901 F.2d 21, 22 (4th Cir.1990). We conclude, therefore, that the explanation of Dr. Bachynsky's failure to furnish controverting facts or figures is that they simply did not exist. Therefore, as required by Sentencing Guidelines § 6A1.3, Dr. Bachynsky was given an adequate opportunity to present evidence concerning a factor relevant to his sentencing, but failed to do so. As his failure was of his own making, Dr. Bachynsky is not entitled to relief.

■ Dr. Bachynsky's second argument, that the district court violated the requirements of Rule 32 [7] by failing to notify or warn him timely that an upward departure based on the dollar loss of the fraud was being contemplated, is equally unpersuasive. In *Burns v. United States,* — U.S. —, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991), the Supreme Court held recently that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." This holding tracks our circuit's rule as set forth in *United States v. Otero. See* 868 F.2d 1412, 1415 (5th Cir.1989) (when the court bases sentence on matters not contemplated by PSI, defense counsel must be given opportunity to address the court on the issue). Dr. Bachynsky argues that because the amended PSI was not submitted until seven days before he was sentenced, three days less than the statutorily mandated ten days,[8] he was not given proper notice as required by Rule 32, *Burns* and *Otero.*

First, Bachynsky cannot argue that he was never made aware of either the possibility of departure or the grounds contemplated for departure. Clearly, the amended PSI put him on notice that departure was recommended. Therefore, the sole issue is whether the timing of the notice of possible departure was reasonable. In *Burns* the Supreme Court expressly left to the lower courts the question of the timing of the notice required by Rule 32. *Burns,* 111 S.Ct. at 2187 n. 6. Therefore, it is for us to determine whether Dr. Bachynsky was timely notified of the contemplated departure and whether such timing was reasonable under the circumstances.

In this instance, the sole basis of the court's upward departure from the guidelines was its finding that an excessive loss was occasioned by the fraud. As we have already explained, the issue of the actual dollar amount attributed to the fraud was a principal point of contention in Dr. Bachynsky's objections to the PSI. Even though this amount was not directly tied to a recommendation for departure until the PSI was amended, this figure was obviously significant to the sentencing process from the time the initial PSI was filed. Unlike the defendants in *Burns* and *Otero,* Dr. Bachynsky had ample opportunity to raise his factual contention that the amount of loss resulting from the fraud was less than the $37 million alleged. In fact, it was Dr. Bachynsky who first raised the issue of the accuracy of this figure when it appeared in the initial PSI. Again, Dr. Bachynsky had

---

**7.** Fed.R.Crim.P. 32(a)(1) provides:
At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.

**8.** Dr. Bachynsky makes much of the rule requiring that the PSI be disclosed to the defendant no less than ten days prior to sentencing, *see* 18 U.S.C. § 3552(d), claiming that this rule equally applies to an amended PSI. While we agree with the general principle that the ten day rule also applies to amendments to the PSI, we do not agree that it should apply in this case.

Again, the sole reason for the delay in providing the amended PSI to Dr. Bachynsky was his own failure to submit his objections timely. Whether this failure was unintentional or was used as a tactic to delay sentencing is irrelevant because the amended PSI contained no new information concerning the amount in controversy. Both the original and the amended PSI always contended that $37 million was the dollar loss occasioned by the fraud; therefore, Dr. Bachynsky was not prejudiced by the "late" notice of departure in the amended PSI because the original PSI had given notice of the suspected amount of the fraud. *See United States v. Jordan,* 890 F.2d 968, 975–76 (7th Cir.1989).

a meaningful opportunity to refute the facts that provided the dollar amount which formed the basis of the court's upward departure. Rule 32, *Burns* and *Otero* require nothing more.

In this case, the fact that Dr. Bachynsky was not given more time following express notification of the contemplated departure is irrelevant because he, his learned counsel and his "guidelines expert" surely recognized the significance of the disputed amount and had ample opportunity to present rebuttal evidence. *Cf. United States v. Hernandez*, 896 F.2d 642 (1st Cir.1990) (notice of departure sufficient even though PSI had not recommended departure because court at sentencing allowed argument on whether departure was proper). To the present time, Dr. Bachynsky has never given the slightest indication of just what additional evidence he might have presented to the court had he been given more time. We therefore find that together, the original and amended PSIs adequately identified the grounds for upward departure in this case and, as a result, Dr. Bachynsky was adequately and timely notified of the contemplated departure. *See also United States v. Jordan*, 890 F.2d 968, 975–76 (7th Cir.1989) (court was not required to give defendant advance notice that it was considering departure as long as defendant was not surprised with new evidence or information).

2. Sufficiency of Evidence of the Amount of Loss Occasioned by the Fraud; Reasons for Departure

■ At sentencing, the district court found that the record in the case supported the finding that the loss occasioned by Dr. Bachynsky's fraud was clearly in excess of $5 million. After acknowledging that $37 million figure was an "outside" figure, the court concluded that

> ... hav[ing] viewed ... all of the testimony, should I say testimony meaning the documents that I have reviewed, the other information that has been presented through the other pleas and the tapes that I have reviewed and all the documentation that has been presented to me

from people who have already reviewed this and who have lived with this for several years, it's my opinion [that the scheme involved] in excess of fifteen million dollars.

The court then imposed sentence, departing upward five levels based on the excessive amount of the loss.

We affirm a defendant's sentence when it is based on factual findings that are not clearly erroneous, and when the sentencing court accurately applies the sentencing guidelines to those facts. *United States v. George*, 911 F.2d 1028, 1029 (5th Cir.1990). Nevertheless, when the district court departs from the guidelines range, it must proffer "reasons explaining why the departure is justified in terms of the policies underlying the sentencing guidelines." *Id.* (quoting *United States v. Mejia–Orosco*, 867 F.2d 216, 221, *clarified on petition for rehearing*, 868 F.2d 807 (5th Cir.1989)). Dr. Bachynsky claims that the court did not make a sufficient finding of fact concerning the amount of loss occasioned by the fraud and did not set forth reasons that justify the upward departure. We disagree on both counts.

In the instant case, the record supports the district court's finding that the loss occasioned by the fraud substantially exceeded $5 million. Unlike the situation in *United States v. Aubrey*, 878 F.2d 825, 828 (5th Cir.1989) in which we remanded because the court made an unsubstantiated "guess" as to the amount of loss caused by the fraud, the court in the instant case considered the findings made in the PSI, which calculated the loss at $37 million, in light of all other testimony, documents and information, and specifically determined that the loss amount was between $15 and $37 million. Furthermore, Dr. Bachynsky, unlike the defendant in *Aubrey*, presented no evidence whatsoever to controvert the government's figures. Given the extensive record in this case, the documentation presented to the court, the affidavit submitted by the investigating agent and the total absence of evidence to the contrary, we conclude that the district court's finding that the loss caused by the fraud substan-

tially exceeded $5 million was not clearly erroneous.

██ Finding a properly determined amount, we next consider the district court's justification for departing upward on the basis of that amount. At the time Dr. Bachynsky was sentenced the guideline applicable to losses due to fraud, Sentencing Guideline § 2F1.1, contemplated losses of only $5 million or less. The district court stated that because the fraud in the instant case so substantially exceeded the maximum amount contemplated by the guidelines, departure was warranted on the basis of being a matter not addressed in the guidelines. As the record in this case supports the district court's finding, we cannot say that the court's upward departure was unreasonable or that the court failed to explain adequately a legally valid reason for departing. Neither do we find unreasonable the district court's consideration of the proposed amendments to section 2F1.1 as a yardstick to measure the appropriate number of levels to depart. We therefore find that the district court made an adequate finding of fact concerning the amount of loss occasioned by the fraud and that its departure based on these findings, as a matter not addressed by the guidelines, was reasonable.

3. Enhancement of Sentence Based on Vulnerability of Victims

██ Dr. Bachynsky's final complaint concerning his sentence is that the district court erred in enhancing his base offense level based on the vulnerability of his victims.[9] He insists that the court erred in finding that the victims of his fraud were his clinic patients and not the insurance companies and the Department of Defense. According to Dr. Bachynsky, the gravamen of his offense was that he defrauded medical insurance companies and the Department of Defense by submitting false diagnoses in order to obtain payment for treatment of conditions not covered by the pa-

tients' policies. Therefore, he reasons, the only "victims" of his scheme were the insurance companies and the government, and not his patients. His reliance on this logic, however, is misplaced.

We do not find that the only victims of Dr. Bachynsky's scheme were the deep pockets that paid the phony claims, or that his patients were in no way victims of the fraud. For each false diagnosis submitted, an unwitting patient was made an instrumentality of the fraud. It is clear that his patients were not aware that Dr. Bachynsky and his cohorts were falsifying insurance claims. Furthermore, as a licensed physician, Dr. Bachynsky's opinion and recommendations undoubtedly were accorded inordinately great respect by members of the public. Dr. Bachynsky's patients relied on him to protect and improve their health, but instead he used them for his own gain. Significant to this point is the implication that the weight loss and smoking cessation programs were not merely "controversial," as claimed by Dr. Bachynsky, but frequently were ineffective and in some cases, actually harmful to the patient. To our knowledge, Dr. Bachynsky has not yet lost his medical license; neither has he been charged with malpractice or improper treatment of his patients. But the mere fact that he may not have been sued for medical malpractice or prosecuted for breaching the standards of medical care does not render his methods medically sound. Furthermore, while relying on Dr. Bachynsky's ineffective course of treatment, his patients may have been foregoing more effective, safer, and legitimate treatments elsewhere. Neither is it mere speculation that at least some of the patients paid personally for portions of the costs of these bogus treatments by virtue of deductibles and co-payments. Thus, contrary to Dr. Bachynsky's claim, the unknowing victims of this scheme included his patients. Therefore the district court did not err by enhancing Dr. Bachynsky's sentence

---

**9.** Sentencing Guideline § 3A1.1 provides for a two level enhancement:
   If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct....

based on the vulnerability of the victims of the fraud.[10]

## III.

## CONCLUSION

Albeit ponderously, we now have addressed the myriad allegations of error that Dr. Bachynsky ascribed to the district court's acceptance of his plea and imposition of his sentence. In the course of our deliberations we have seen each alleged error vanish, either as harmless error or as no error at all, when tested with the litmus of the full record and a proper interpretation of applicable law. Following, as it does, *Bachynsky I* and *Bachynsky En Banc*, we trust that *Bachynsky II* will be the proverbial third charm that writes *finis* to this whole sordid affair.

For the foregoing reasons, Dr. Bachynsky's conviction and the sentence imposed therefor are

AFFIRMED.

---

**10.** Although not necessary to our finding that enhancement based on the victim's vulnerability was proper, we note that in this particular case the insurance companies and the Department of Defense may themselves be deemed "vulnerable" victims because of their "particular susceptibility" to this type of fraud. Here, the insurance companies were confronted with innumerable claims that, on the surface, appeared to justify payments for legitimate treatments of serious medical conditions—the true nature of the treatments (weight loss and smoke cessation) being obscured by the false diagnoses or false descriptions of the services rendered. Furthermore, the sheer numbers of claims that passed through a large insurance company or governmental claims office increased the likelihood of fraudulent claims "slipping through the cracks" and helped prevent detection of the scheme.