UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20018
_____


UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

                    versus

ARVELL J. RABE,

                                    Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas
H-98-CR-351-1
_____
February 21, 2001


Before BARKSDALE, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

        Defendant-appellant Arvell J. Rabe (Rabe) appeals his

convictions for bank fraud (18 U.S.C. § 1344) arising out of an

alleged check kiting scheme.  The sole issue Rabe raises on appeal

is whether the district court erred in charging the jury with

respect to "deliberate ignorance."  Finding that any error was

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under the
limited circumstances set forth in 5TH CIR. R. 47.5.4.

harmless, we AFFIRM.

I.   FACTUAL AND PROCEDURAL HISTORY

The evidence at trial established that, in 1996, Rabe set up a commercial checking account with Norwest Bank.  The account was in the name of A.J. Rabe, Inc., doing business as Eastex Livestock Company (the "Norwest Account").  Rabe also had an account at Citizens State Bank ("Citizens") in Marlin, Texas, in the name of Marlin Livestock Company (the "Marlin Livestock account").  Rabe requested that Citizens authorize a person named Kimberly Truax to sign checks on the Marlin Livestock account.

The alleged kiting scheme began in June 1997.  From June to September, Rabe deposited checks into the Norwest account drawn on the Marlin Livestock account.  Thereafter, he would obtain a cashier's check from Norwest against the uncollected deposit and then deposit that check into the Marlin Livestock account. Overall, Rabe deposited into the Marlin Livestock and Norwest accounts "kited" checks totaling $2.8 million, while his actual deposits totaled only $66,000.  During that time, Rabe deposited into the Norwest account eleven checks drawn on the Marlin Livestock account, payable to Eastex Livestock or A.J. Rabe, Inc. Each Marlin Livestock check was purportedly signed by Kimberly Truax.  Rabe and Truax contradicted each other's testimony regarding whether Truax had authorized Rabe to sign her name. Nevertheless, Rabe admitted that he had signed the checks in Kimberly Truax's name, and Truax testified that the signature

2

authorization for the Marlin account was not hers.

Four of the deposits in question were made in person at the Briarcrest branch, four were made in person at the Rock Prairie location, and three were mailed to the bank. On either the day each deposit was made or on the following day, Rabe would go to Norwest's Rock Prairie location, some six to eight miles from the Briarcrest location, and obtain a cashier's check in amounts nearly equal to the amount of the deposit.

The jury found Rabe guilty of ten counts of bank fraud. The district court sentenced him to twenty-one months of imprisonment as to each count, to run concurrently.

II. JURY INSTRUCTION

The only issue Rabe raises on appeal is that the district court erred by giving a jury instruction on "deliberate ignorance." This Court reviews challenged jury instructions for abuse of discretion and will not reverse if the court's charge, viewed in its entirety, is a correct statement of the law which clearly instructs jurors as to the relevant principles of law applicable to the factual issues confronting them. See United States v. Hernandez, 92 F.3d 309, 311 (5th Cir. 1996); United States v. Ojebode, 957 F.2d 1218, 1228 (5th Cir. 1992). We look to the entire charge in the context of the trial and will reverse only if the charge, as a whole, "misled the jury as to the elements of the offense." United States v. Wyly, 193 F.3d 289, 300 (5th Cir. 1999) (internal quotation marks and citations omitted).

3

The district court instructed the jury that in order to find Rabe guilty they had to find, *inter alia*, that Rabe executed or attempted to execute a scheme or artifice to defraud Norwest Bank and that he acted knowingly. The court instructed the jury that a scheme to defraud means a plan involving a false or fraudulent pretense or promise "intended to deceive others in order to obtain something of value." Further, the court stated that a defendant acts with "intent to defraud if the defendant acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to the defendant." The word "knowingly" was defined as meaning "that the act was done voluntarily and intentionally and not because of mistake or accident."

The court then gave the following instruction:

You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what otherwise would have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

Rabe objected to this instruction, arguing that there was no evidence of subjective knowledge of illegality and that he admitted writing the checks; thus, a deliberate-ignorance instruction was not appropriate. The Government countered that the instruction was appropriate because Rabe avoided his account officer, Robert Wood (Wood), by going to the Rock Prairie branch to obtain the cashier's

4

checks.  The court overruled the objection and, at Rabe's urging, added a good-faith instruction.[1]

We will assume for purposes of this appeal that the district court erred by giving the deliberate-ignorance instruction.  It therefore must be determined whether the error was harmless.  An erroneous jury instruction that pertains to an element at issue is harmless "if the evidence of guilt is so overwhelming that the error could not have contributed to the jury's decision to convict."  See United States v. Chen, 913 F.2d 183, 188 n.6 (5th Cir. 1990) (internal quotation marks and citation omitted).

Rabe contends that the instruction was not harmless error because there was evidence that Rabe reasonably could have believed that Wood had given him a floating loan.  For example, on several occasions, Wood approved checks in excess of the $10-12,000 limit against uncollected funds for Rabe's business purposes, and the Rock Prairie personnel authorized

_____

[1] The court instructed on good faith as follows:
Good faith is a complete defense to the charges in the indictment, since good faith on the part of the defendant is inconsistent with intent to defraud or willfulness, which is an essential part of the charges.  The burden of proof is not on the defendant to prove good faith, of course, since the defendant has no burden to prove anything.  The government must establish, beyond a reasonable doubt that the defendant acted with specific intent to defraud as charged in the indictment.

5

cashier's checks in significant amounts. According to Rabe, however, the deliberate-ignorance instruction "tipped the scales," because it created a risk that the jury would equate specific intent with deliberate ignorance, and thus allowed the jury to find Rabe guilty if he "should have known" that his actions would defraud Norwest, even if he did not intend to do so.

A jury may infer intent to defraud from all the facts and circumstances surrounding the transaction in question. See United States v. Aubrey, 878 F.2d 825, 827 (5th Cir. 1989) (mail-fraud case). Rabe clearly knew that there were no funds in the Marlin Account to cover the checks he deposited in his Norwest Account, as there was little to no business activity for Marlin and he knew that he was writing checks against other checks rather than against cash deposits.[2] He also signed Kimberly Truax's name to the checks, although she did not work for him and was in prison at the time the checks were signed. Most significantly, on several occasions, Rabe made deposits at one branch of his bank and then obtained cashier's checks on the same day at another branch, only a few miles away. These facts support an inference that Rabe was engaged in a scheme to defraud Norwest.

---

[2] According to FBI financial analyst Ronald Emmert, there was no evidence of any significant business activity for either Marlin Livestock or Eastex during 1997.

Finally, the instructions as a whole emphasized that the Government was required to prove specific intent to defraud, and Rabe was allowed to argue that he believed that his actions were authorized by Norwest. The court told the jury that good faith was a defense and that the Government had to prove Rabe's specific intent to defraud. The Government did not mention deliberate ignorance in its cross-examination of Rabe or in its closing remarks, and there was no evidence adduced at trial that Rabe deliberately ignored any suspicious facts. These factors, combined with the evidence of Rabe's guilt, persuade us that the instruction, even if erroneously given, could not have contributed to the jury's decision to convict.

Accordingly, the district court's judgment is AFFIRMED.