REVISED, October 19, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-60137

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS


JEFFERY W. GIEGER; TRACIE L. GIEGER,

Defendants-Appellants.

_____

Appeals from the United States District Court
For the Southern District of Mississippi
_____
September 24, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendants-Appellants Jeffery W. Gieger and Tracie L. Gieger (the "Giegers") challenge on a number of grounds their convictions for conspiracy to submit false claims to Medicare in violation of 18 U.S.C. § 286. For the reasons that follow, we affirm their convictions. However, we vacate their sentences and remand this case for resentencing.

I.

In 1992, the Giegers founded Gieger Transfer Service, Inc./Gieger Ambulance Service ("GAS") to transport both emergency and non-emergency patients. GAS expanded rapidly and by the time the company was sold in 1997, GAS operated over forty ambulances in twelve counties in rural Southeastern Mississippi.

GAS transported a large number of Medicare patients. After 1993, GAS filed electronic reimbursement requests with Medicare. GAS's initial attempts to obtain reimbursement from Medicare did not go smoothly. In response to this problem, the Giegers began misrepresenting to Medicare that all of GAS's non-emergency transports were for "bed-confined" patients. Consistent with this billing practice, the Giegers instructed their paramedics and emergency medical technicians not to use the word "ambulatory" on the patient transport reports.

In December 1996, the Federal Bureau of Investigations ("FBI") began investigating GAS's billing practices. After FBI Special Agent Gregory Deegan conducted an in-depth investigation, the Giegers were charged in a fifty-seven count indictment. This indictment included charges of Medicare fraud, conspiracy to submit false claims, money laundering, transmitting money instruments or funds derived from specified unlawful activities, and a number of similar charges. In October 1997, the Giegers were tried on forty-six counts of this indictment. The jury returned a guilty verdict on only Count 1--conspiracy to submit false claims to Medicare in violation of 18 U.S.C. § 286.[1]

At sentencing, the district court enhanced the Giegers' sentences because the Geigers abused a position of trust and the conspiracy involved a "vulnerable victim." After the enhancement, the district court sentenced the Giegers to eighty months in

_____

[1]Section 286 makes it illegal for any person to "enter into any agreement, combination or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim." 18 U.S.C. § 286.

2

prison, three years of supervised release, a fine of $12,500, and ordered restitution in the total amount of $228,917. In this appeal both Jeffery and Tracie Gieger challenge their convictions and sentences.

II.

Tracie Gieger makes a number of arguments on appeal. Jeffery Gieger adopts these arguments and also makes arguments of his own. We turn first to those arguments raised by Tracie Gieger.

A.

Tracie Gieger first contends that the district court erred in denying her motion for judgment of acquittal, or in the alternative a new trial, on Count 1, the conspiracy count, because of the jury's failure to convict her on any substantive counts.

In this Circuit, however, the law is clear that inconsistent verdicts are not a bar to conviction so long as there is sufficient evidence to support the jury's determination of guilt. See, e.g, United States v. Sylvester, 143 F.3d 923, 930 (5th Cir. 1998) (inconsistent verdicts not a bar to conviction); United States v. Scurlock, 52 F.3d 531, 537 (5th Cir. 1995) (jury can render inconsistent verdicts, even when inconsistency is the result of mistake or compromise). This argument is without merit.

B.

Tracie Gieger next argues that the district court made a number of erroneous evidentiary rulings that require reversal of her conviction. These include: improperly restricting defense counsel's cross-examination of key prosecution witnesses; improperly overruling defense counsel's objections during the

3

prosecution's direct examination of key witnesses; improperly excluding the testimony of defense expert witness Archie Lancaster; and imposing more stringent restrictions on the defense than on the Government in examining witnesses. After examining the record, we are satisfied that the district court did not abuse its discretion in these challenged rulings.

## C.

Mrs. Gieger also makes two challenges to her sentence. She first contends that the district court erred in enhancing her sentence and that of her former husband based on the "vulnerable victim" and "position of trust" provisions in the Sentencing Guidelines.

Section 3A1.1(b) of the Sentencing Guidelines permits a two level enhancement of a defendant's base offense level where "the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." U.S. Sentencing Guidelines § 3A1.1(b). In this case, the district court enhanced the Giegers' sentences because "the victims of this offense were unusually vulnerable due to age, physical or mental condition and that the government as a victim was otherwise particularly susceptible to the criminal conduct committed by the defendant." The Giegers contend that this enhancement was not warranted because the patients were not victims and the victim (the United States Government) was not vulnerable. We agree.

First, the patients were not victims of the Giegers' fraud

4

scheme. In contrast to other medical fraud cases within this Circuit in which patients suffered harm or at least potential harm from the fraudulent scheme,[2] the patients here suffered no harm. Instead the patients benefitted from the scheme--they received a free ride to the hospital.

If the patients had paid money through a deductible, copayment or similar charge, they might be considered victims of the fraud. See United States v. Bachynsky, 949 F.2d 722, 735 (5th Cir. 1991) (patients were victims in part because they paid personally for bogus treatment through copayments and deductibles). The Government, however, points to no evidence that the GAS patients ever made such payments. In fact, as part of the fraudulent scheme, GAS promised patients that they would not be required to make any payment. At oral argument, the Government conceded that the patients were probably not victims of the scheme. Because they suffered no medical harm and no financial harm, the patients cannot be considered victims of the Giegers' fraudulent scheme.

We turn now to whether the vulnerable victim enhancement can be applied to the government. Section 3A1.1 of the Sentencing Guidelines is leveled at criminals who take advantage of individuals who are more vulnerable than the average members of society, such as the elderly, the young, or the sick. See, e.g.,

---

[2]  See United States v. Burgos, 137 F.3d 841, 844 (5th Cir. 1998) (Patients "were often admitted to the hospital needlessly or their stays in the hospital were extended beyond what was necessary . . . ."); United States v. Bachynsky, 949 F.2d 722, 735 (5th Cir. 1991) (Unnecessary treatment was frequently ineffective and in some case actually harmful to the patients).

<u>United States v. Moree</u>, 897 F.2d 1329, 1336 (5th Cir. 1990). The United States government simply does not fall in the same category as these more vulnerable members of society. If the United States government is a vulnerable victim, it is hard to imagine a victim who would not be considered vulnerable.

The prosecution relies almost entirely on a footnote in <u>United States v. Bachynsky</u>, 949 F.2d 722 (5th Cir. 1991), in support of this enhancement. In that opinion, a panel of this Court stated, in dicta, "we note that in this particular case the insurance companies and the Department of Defense may themselves be deemed 'vulnerable' victims because of their 'particular susceptibility' to this type of fraud." <u>Id.</u> at 736 n.10. We find this dicta unpersuasive and contrary to section 3A1.1's text and we choose not to follow it. Instead, we are guided by the rationale underlying this Court's opinions in <u>Moree</u>, 897 F.2d at 1335-36 (Section 3A1.1 would be triggered by the robbery of a blind, elderly, or physically disabled shopkeeper but not by theft from a bank, even if the thief was aware of a security breach that rendered the bank especially vulnerable), and in <u>United States v. Burgos</u>, 137 F.3d 841, 844 (5th Cir. 1998), in which we stated that insurance companies "are not, and could not have been found to be, vulnerable victims." Both the text of section 3A1.1 and these cases persuade us that the United States government cannot be considered a vulnerable victim. The district court therefore erred in enhancing the Giegers' sentences on this basis.

Tracie Gieger also argues that the district court erred by enhancing the Giegers' sentences under section 3B.1.3 of the

Guidelines for abusing a position of trust. This section provides a two-level enhancement for defendants who have "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. We agree with the Government that this argument is barred by United States v. Iloani, 143 F.3d 921, 922-23 (5th Cir. 1998). In Iloani we applied the enhancement to a chiropractor convicted of defrauding insurers. Id. at 923. We held that a chiropractor maintains a position of trust with the insurance companies that he billed. Id. at 923. In the instant case, the defendants carried out their fraud by abusing a similar position of trust with medical insurers. Therefore, under Iloani, the district court did not err in enhancing the Giegers' sentences under section 3B1.3.

D.

Tracie Gieger's final argument challenges the district court's order requiring that the Giegers pay $228,917 in restitution to Medicare. She contends that because she was acquitted on all the substantive counts, she cannot be required to pay restitution on the conspiracy count. She also argues that because the district court did not provide a specific factual basis for the restitution order, the order must be vacated.

We find her arguments unpersuasive. The conspiracy count is an adequate basis for the restitution order. The court based the amount of the restitution order on the amount that Medicare paid on the fraudulent billings. The restitution order has sufficient support.

7

III.

We now turn to the additional arguments raised by Jeffery Gieger.

A.

Jeffery Gieger contends that his conviction cannot be upheld because the evidence is legally insufficient. He argues first that the Medicare guidelines are vague, confusing and conflicting and the district court erred in rejecting his argument that as a matter of law he did not knowingly submit false claims. We are not persuaded. The words "bed confined" were not so vague or confusing that Gieger was unable to discern their meaning.

We also reject Jeffery Gieger's argument that he did not have the state of mind necessary for conviction because he was merely following the instructions provided by United Healthcare and relying on the advice of his lawyer. The jury was entitled to find that the Giegers had the requisite state of mind to commit the offense.

Jeffery Gieger's final argument on this issue is that his claims were not "false" within the meaning of 18 U.S.C. § 286 because the two patients that the Government used at trial to demonstrate the fraud were entitled to reimbursement of their transportation charges by Medicare even if they were not bed-confined. Gieger argues that both patients the government presented as witnesses, Henry Bush and Annie Scott, were entitled to reimbursement for their ambulance transportation on the alternative ground that the transportation was medically necessary. He further contends that the district court erred in refusing to

8

permit the Giegers to submit evidence demonstrating their eligibility on this alternative ground.

According to Mr. Gieger's theory, a defendant cannot violate section 286 so long as he transports patients whose transportation is covered by Medicare because it is medically necessary, even if he bases his reimbursement claim on another reason -- even a false or fraudulent one.

We have found a number of cases rejecting arguments seeking a similar construction of the companion statute to section 286 -- 18 U.S.C. § 287, the substantive federal false claims statute. Courts have explained that because the language of section 287 (like 286) covers not only those who submit "fraudulent" claims, but also those who submit "false" or "fictitious" claims, a defendant may not escape the reach of the statute by arguing that the government was not actually defrauded. While a claim may not be fraudulent under this section unless the defendant intends to obtain funds by fraud from the federal government, a claim is false whenever it is "known to be untrue by the person making it or causing it to be made." United States v. Milton, 602 F.2d 231,233 (9th Cir. 1979).

For example, in United States v. Belcker, 657 F.2d 629 (4th Cir. 1981), the defendant contended that the trial court erred both in excluding evidence that the government "got it's money's worth" for consulting services performed by the defendant and in failing to instruct the jury that to convict it must find that the government did not receive adequate value for the work performed by the defendant. Id. at 634. The Fourth Circuit rejected these arguments, explaining that section 287, like 286, "is phrased in

9

the disjunctive, and a conviction under that statute may therefore be based on proof that a claim submitted to the government is either false, fictitious or fraudulent." Id.. Accordingly, the court held that regardless of whether the government was actually defrauded, the defendant had violated section 287 by knowingly submitting inaccurate claim forms. Id. at 635. Accord United States v. Milton, 602 F.2d 231, 233 (9th Cir. 1979)(statement need only be false in order to violate section 287); cf. United States v. Leahy, 82 F.3d 624, 634 n.11 (5th Cir. 1996)(holding that defendant contractor violated section 286 even though the false claims were irrelevant to the total amount paid by the government to the contractor).

Furthermore, as a number of courts have recognized, Congress fashioned the federal false claim statutes to punish not only those who would cheat the federal government, but also those who would "mislead it in the administration of its programs." United States v. White, 27 F.3d 1531, 1535 (11th Cir. 1994)(quoting United States v. Johnson, 284 F. Supp. 273, 278 (W.D. Mo. 1968),discussing section 287). See also United States v. Maher, 582 F.2d 842, 847-8 (4th Cir. 1978) ("The plain purpose of § 287 is to assure the integrity of claims and vouchers submitted to the government."); Pina v. United States, 165 F.2d 890, 893 (9th Cir. 1948)("the contemplated infliction of monetary loss is not a necessary ingredient of an intent to defraud the United States"). If we accepted Gieger's argument on this point, Medicare's task of determining which claims are covered and reimbursable would be an impossible one. The reimbursement form would be useless for this

10

purpose because the agency could not rely on the form to determine coverage. We decline to endorse such an interpretation of sections 286 and 287.

Accordingly, we conclude that the evidence is legally sufficient to support the Giegers' convictions. We also conclude that the district court did not abuse its discretion in excluding the Giegers' evidence related to this argument.

B.

Jeffery Gieger also contends that his conviction must be overturned due to the inadequacy of the record. In support of his claim, he observes that the district court failed to place on the record seventy-two bench conferences, most of the bench conferences from the trial.

Clearly many of these bench conferences should have been placed on the record. Whether this error mandates reversal, however, is a separate issue. The law relating to incomplete records in this Circuit is set forth in United States v. Selva, 559 F.2d 1303 (5th Cir. 1977). Under Selva, an appellant must generally show prejudice from omissions or errors in the record before such lapses require reversal. Id. at 1305. If the appellant, however, is represented on appeal by an attorney other than the one who represented him at trial, no showing of prejudice is required. Id. All that is required is that the appellant demonstrate that the missing record portions are "significant and substantial." Id. at 1306.

The Government contends that Jeffery Gieger's trial counsel,

Sam Wilkins, is still his counsel because the court has not released him from that position. But Wilkins did not file the Notice of Appeal or make any other appearance in this court. Nor does his name appear on any of the briefs. We must therefore conclude that Jeffery Gieger is represented by new counsel on appeal. For that reason, we examine the record and attempt to decipher what took place at the missing bench conferences to determine if they are "significant and substantial." While the entire context of all the bench conferences is not entirely clear, we can determine the following. Many of the bench conferences were administrative in nature. These conferences are not important to the record on appeal. Some of the conferences were permitted to allow further argument on evidentiary objections. Objections to the court's rulings following these bench conferences makes the arguments leading up to the rulings unimportant to the record on appeal. Other missing bench conferences concern counts on which the Giegers were acquitted. In sum, while we agree with Jeffery Gieger that many of these bench conferences should have been placed on the record, we are not convinced that these bench conferences are substantial and significant. We therefore decline to reverse the Giegers' convictions on this ground.

## Conclusion

For the reasons stated above, we affirm Appellants' convictions. We affirm Appellants' sentence with one exception. We agree with Appellants that their sentences should not have been enhanced under the "vulnerable victim" provision of the Sentencing

Guidelines.  Therefore, we vacate Appellants' sentences and remand this case to the district court for resentencing.

AFFIRMED in part, VACATED in part, and REMANDED.