IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 10, 2009

Charles R. Fulbruge III
Clerk

No. 07-41173

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ANURA ANDRADI

Defendant - Appellant

Appeal from the United States District Court
For the Eastern District of Texas
USDC No. 4:06-CR-227-3

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

PER CURIAM:[*]

Convicted of, *inter alia*, health-care fraud, in violation of 18 U.S.C. § 1347, and sentenced to 97 months' imprisonment, Anura Andradi contests only his sentence. He contends the district court erred in both its loss calculation and offense-level determination. AFFIRMED.

I.

Andradi was owner of Doctor's Ambulance Service (Doctor's), which transported non-emergency patients to dialysis appointments. Medicaid and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Medicare require patients to be non-ambulatory in order for ambulance services to be reimbursed for their transportation. Although many of Doctor's patients were ambulatory, Doctor's nevertheless submitted claims to Medicare and Medicaid and was reimbursed for transporting these patients.

Although he had partners, Andradi remained actively involved in the management of Doctor's. He controlled the manner in which the emergency medical technicians performed their jobs, and followed the ambulances to ensure his directives were obeyed. Claims to Medicaid and Medicare were filed initially by an outside company, and later by two individuals associated with Doctor's, Maulie Happawana and Ronald Pyatt.

Andradi, along with Happawana, Pyatt, and Doctor's, was charged by a 44-count superseding indictment with, inter alia, health-care fraud and conspiracy to commit health-care fraud. After a jury trial, Andradi was convicted of 40 counts of the superseding indictment. The jury also found that $750,000 and other assets should be forfeited.

The presentence investigation report (PSR) concluded that Medicare and Medicaid had lost over $2.5 million as a result of the fraud perpetuated by Doctor's. This amount encompassed both the fraud charged in the indictment and other fraud subsequently discovered by investigators, as discussed below. Andradi objected to the PSR.

At sentencing, the district court heard testimony from a Special Agent with the Federal Bureau of Investigation who had been actively involved in the investigation of Andradi. The Special Agent testified, inter alia: the indictment involved 20 patients for whose transportation Doctor's fraudulently claimed reimbursement (totaling $1,676,140.08). The FBI suspected Doctor's claimed fraudulent reimbursement for other patients; consequently, the FBI reviewed

almost every other Doctor's submission to Medicare and Medicaid; the FBI concluded there were 36 other patients for whose transportation Doctor's fraudulently claimed reimbursement; and these unindicted reimbursements totaled $1,042,874.92. The district court overruled Andradi's objections, found his offense level to be 30 (based in part on the above-referenced loss calculation), and sentenced him to, inter alia, 97 months in prison.

## II.

Andradi challenges only his sentence, claiming the district court erred: in its loss calculation, primarily because that calculation was contrary to the jury's verdict and because there was a disparity between his sentence and those of his co-defendants; and by enhancing his offense level both for being an organizer or leader of a criminal activity and for abusing a position of trust.

Although post-Booker, the Sentencing Guidelines are advisory only, and an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the guideline-sentencing range for use in deciding on the sentence to impose. Gall v. United States, 128 S. Ct. 586, 596 (2007). In that respect, its application of the guidelines is reviewed de novo; its factual findings, only for clear error. E.g., United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008); United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005).

## A.

The Sentencing Guidelines provide a base offense level of six for health-care fraud. U.S.S.G. § 2B1.1(a)(2). When the loss occasioned by the fraud is between $400,000 and $1,000,000, the Guidelines increase this level by 14.

U.S.S.G. § 2B1.1(b)(1)(H). By contrast, fraud producing a loss of more than $2,500,000 increases the offense level by 18. U.S.S.G. § 2B1.1(1)(J).

Andradi contends the district court erred in its loss calculation of over $2.5 million because the jury's forfeiture verdict of $750,000 precluded a different result on this issue. He further contends his sentence was disparate from those of Happawana and Pyatt, indicating retaliation for his decision to proceed to trial and the Government's impermissible use of inconsistent theories of the case.

1.

Regarding the assertion that the jury's $750,000 forfeiture verdict precluded a loss amount of over $2.5 million for sentencing purposes, our court has previously recognized that the loss-amount and forfeiture-amount calculations are conceptually-distinct inquiries. See United States v. Harms, 442 F.3d 367, 380 (5th Cir. 2006) ("we are persuaded that the Fourth Circuit is correct in distinguishing between the amount of forfeiture from the amount of loss"). The jury's forfeiture verdict did not address the amount of loss to be used in calculating Andradi's sentence. Having addressed a different issue, the jury's verdict lacks preclusive effect. See United States v. Monkey, 725 F.2d 1007, 1010 (5th Cir. 1984).

Other courts have similarly concluded a jury's forfeiture verdict lacks preclusive effect regarding loss calculation. In United States v. Hoover-Hankerson, 511 F.3d 164, 171 (D.C. Cir. 2007), the District of Columbia Circuit concluded a district court was not bound by the jury forfeiture verdict in calculating loss amount. In United States v. Hamaker, 455 F.3d 1316, 1337 (11th Cir. 2006), the Eleventh Circuit reversed a district court decision relying

exclusively on the jury's forfeiture verdict in calculating loss amount, noting the two values "need not be calculated identically".

## 2.

In addition, Andradi asserts, without citation to authority, that the "loss amount in this case has been calculated in error" because he was acquitted of the conspiracy charges. It is well established, however, that a "jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence". United States v. Watts, 519 U.S. 148, 157 (1997). Therefore, Andradi's contention regarding the effect of his acquittal is meritless.

## B.

Andradi next contends his sentence was grossly disparate from those of Happawana and Pyatt, indicating retaliation for his decision to stand trial. He further contends the differences in loss calculation between him and his co-defendants indicates the Government relied on inconsistent theories of the case.

Although a district court should "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct", 18 U.S.C. § 3553(a)(6), the record clearly reflects that Andradi's involvement was far more extensive than that of Happawana and Pyatt. On the one hand, Happawana and Pyatt both only spent some months overseeing the billing for Doctor's; on the other, Andradi owned Doctor's and orchestrated the fraudulent scheme. Accordingly, there was no unwarranted disparity between Andradi's sentence and those of his co-defendants.

## C.

Andradi claims the district court erred by enhancing his offense level for being a "leader or organizer". See U.S.S.G. § 3B1.1. The district court's determination a defendant was a leader or organizer of criminal activity is a question of fact reviewed only for clear error. See United States v. Watson, 988 F.2d 544, 550 (5th Cir. 1993). As our court noted in United States v. Barreto, 871 F.2d 511, 512 (5th Cir. 1989), the commentary to the relevant sentencing guideline compels a court to consider seven factors in determining "leadership" status: "(1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others". Id. (citing U.S.S.G. § 3B1.1, cmt. n.4).

According to the PSR, Andradi owned Doctor's, an enterprise with 68 employees and a fleet of ambulances. Andradi rebuffed employee concerns about Doctor's practice of transporting ambulatory patients. Three different billing personnel submitted false claims on Doctor's behalf. Furthermore, Andradi directed the criminal activities of his co-defendants and other employees, and his criminal conduct relied on the actions of many others. Accordingly, the district court did not clearly err in finding Andradi was a leader or organizer.

### D.

Lastly, Andradi contends the district court erred by enhancing his offense level for abusing a position of trust. See U.S.S.G. § 3B1.3. "We review the district court's imposition of an abuse of trust enhancement for clear error." United States v. Iloani, 143 F.3d 921, 922 (5th Cir. 1998). This final contention

is plainly foreclosed by United States v. Gieger, 190 F.3d 661, 665 (5th Cir. 1999), in which our court affirmed an abuse-of-trust enhancement imposed on the operators of an ambulance company that filed fraudulent claims with Medicare. "[B]ecause the government as insurer depends upon the honesty of the [health care provider] and is easily taken advantage of if the [provider] is not honest", United States v. Rutgard, 116 F.3d 1270, 1293 (9th Cir. 1997), an enhancement is appropriate when providers, like Doctor's, abuse this trust.

III.

For the foregoing reasons, the judgment is AFFIRMED.