IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2009

Charles R. Fulbruge III
Clerk

No. 06-11407

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

BASSEY JACKSON EKANEM

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, GARZA, and DeMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Bassey Jackson Ekanem ("Ekanem") was convicted on five counts of healthcare fraud in violation of 18 U.S.C. § 1347. Ekanem now appeals, contending that (1) there was a fatal variance between Count Four of the indictment and the evidence presented at trial; (2) there was insufficient evidence to support a conviction on Count Five of the indictment; and (3) the district court erred in calculating his Guidelines range based on the relevant conduct of others under U.S.S.G. § 1B1.3. For the following reasons, we affirm Ekanem's convictions but remand the case for resentencing.

I

Ekanem owned and operated Rooster Medical Equipment and Supplies ("Rooster"), a supplier of durable medical equipment. The government alleged that Ekanem, through Rooster, engaged in a fraudulent scheme to provide patients with motorized scooters while billing Medicare for more expensive motorized wheelchairs. The charging indictment contained five counts of alleged fraud in violation of 18 U.S.C. § 1347; each count contained a specific Medicare claim tied to a specific patient. At trial, the patients set forth in Counts One through Four testified that they never received the more expensive wheelchairs that were billed to Medicare. As to Count Five, the government offered circumstantial evidence that a wheelchair was never delivered. Ekanem was convicted on all five counts.

At sentencing, the district court sought to determine the applicable Guidelines range. The government argued that Ekanem's offense level should be increased based on the relevant conduct of Don Usanga ("Usanga"), who helped Ekanem set up Rooster. After a hearing, the court determined that Ekanem had entered into a "jointly undertaken criminal activity" involving Usanga's own fraudulent medical-equipment company, Mendus Medical. Thus, the court found that losses caused by Usanga and Mendus Medical were "relevant conduct" attributable to Ekanem for sentencing purposes. See U.S.S.G. § 1B1.3. Ekanem's offense level was increased by two levels to 32, resulting in an advisory Guidelines range of 121 through 151 months. The court ultimately sentenced Ekanem to 120 months of imprisonment. Ekanem now appeals his convictions and sentence.

II

Ekanem first contends that there was a fatal variance between the terms of Count Four of the indictment and the evidence offered at trial. We review

such claims for harmless error—the defendant must show that the variance was material and prejudiced his substantial rights. United States v. Freeman, 434 F.3d 369, 374–75 (5th Cir. 2005). "As long as the defendant receives notice and is not subject to the risk of double jeopardy, his substantial rights are not affected." Id at 375 (internal quotation marks omitted).

The evidence at trial indicated that Ekanem committed fraud with regard to Medicare claim number 03234877398000—a reimbursement claim for a wheelchair allegedly delivered to patient Otis Howard. However, the claim number in Count Four of the indictment contained an extra digit and read 032234877398000. Because these different numbers represent different dates for the alleged conduct,[1] Ekanem contends that he was prejudiced in preparing his defense and may be in danger of double jeopardy.

Ekanem cannot show an error that affected his substantial rights. The claim-number variance in the indictment was a harmless typographical error. Count Four contained additional information identifying the specific conduct charged, including the name of the patient, the name of the doctor, the exact amount of the reimbursement claim, and the calendar date (August 22, 2008) on which the claim was submitted. See McGill v. United States, 10 F.2d 972, 973 (5th Cir. 1926) (explaining that a variance may be cured by other identifying information in the indictment); see also United States v. Miller, 491 F.2d 638, 648–49 (5th Cir. 1974) ("[T]he validity of an indictment is determined by practical, not technical considerations."). Furthermore, the typographical error was discussed at length at trial. See United States v. Levy, 803 F.2d 1390, 1395 (5th Cir. 1986) (explaining that a subsequent court may look beyond the prior indictment in assessing double-jeopardy claims). Thus, Ekanem received notice

---

[1] The first five digits of a claim number represent a Julian date. The digits 03234 represent August 22, 2003, while the digits 03223 represent August 11, 2003. Thus, the trial evidence indicated that Ekanem fraudulently submitted a claim for patient Howard on August 22, while the indictment literally charged Howard with submitting a claim on August 11.

of the conduct charged and is in no danger of double jeopardy for the same conduct. The variance did not affect Ekanem's substantial rights.

III

Ekanem next claims that there was insufficient evidence to support a conviction on Count Five of the indictment. We review a claim of insufficient evidence to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Infante, 404 F.3d 376, 384 (5th Cir. 2005) (internal quotation marks omitted). In applying this standard, we view the evidence in the light most favorable to the prosecution and accept all reasonable inferences that tend to support the verdict. Id.

Count Five of the indictment charged Ekanem with fraudulently billing Medicare for the delivery of a wheelchair to patient Loretha Williams in violation of 18 U.S.C. § 1347. The following evidence was presented at trial: The government offered a delivery log indicating that Ekanem's Rooster had delivered a motorized scooter to Ms. Williams in November, 2003. A government agent testified that she visited the home of Ms. Williams and observed such a scooter with three "Rooster Medical" stickers on it. The agent further testified that the only claim submitted by Rooster with regard to Ms. Williams was for a more expensive motorized wheelchair. Ekanem argues that this evidence does not rule out the possibility that Rooster separately delivered the motorized wheelchair that was billed to Medicare.

Viewing the evidence in the light most favorable to the prosecution, we hold that a reasonable jury could have convicted Ekanem on Count Five. "The evidence need not exclude every reasonable hypothesis of innocence . . . ." Infante, 404 F.3d at 384. At trial, the government established a pervasive scheme of billing for wheelchairs and delivering scooters (i.e., Counts One

through Four of the indictment). Given that Rooster delivered a scooter to Ms. Williams that was never billed to Medicare, it is reasonable to infer that Rooster did not deliver a separate wheelchair. Accordingly, there was sufficient evidence to support a conviction on Count Five.

IV

Finally, Ekanem contends that the district court erred in enhancing his offense level based on the "relevant conduct" of Don Usanga pursuant to U.S.S.G. § 1B1.3. A determination of relevant conduct is a finding of fact. United States v. Buck, 324 F.3d 786, 796 (5th Cir. 2003). We review factual findings for clear error. United States v. Caldwell, 448 F.3d 287, 290 (5th Cir. 2006). Under the clearly erroneous standard, we will uphold a finding so long as it is "plausible in light of the record as a whole." Id. However, a finding will be deemed clearly erroneous if, based on the record as a whole, we are "left with the definite and firm conviction that a mistake has been committed." United States v. Castillo, 430 F.3d 230, 238 (5th Cir. 2005) (internal quotation marks omitted).

Under the Guidelines, a defendant's offense level may at times be increased based on the relevant conduct of others: "[I]n the case of a jointly undertaken criminal activity," the court may hold a defendant accountable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); see United States v. Willis, 273 F.3d 592, 598–99 (5th Cir. 2001). A jointly undertaken criminal activity is "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others." § 1B1.3(a)(1)(B). In determining relevant conduct, a court should specifically look to "the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of

the specific conduct and objectives embraced by the defendant's agreement)." § 1B1.3, comment. (n.2).

Here, the district court found that Ekanem entered into "a jointly undertaken criminal activity with Mendus Medical which is owned by Mr. Usanga." Thus, the court determined that the financial losses caused by Mendus Medical were relevant conduct attributable to Ekanem and increased Ekanem's offense level accordingly.[2]  Ekanem now appeals this determination.  The government points to the following record evidence in support of the district court's finding:  (1) Usanga helped Ekanem set up and establish Rooster; (2) Usanga allowed Ekanem to use Mendus Medical's supplier number when Rooster's was temporarily revoked; (3) Rooster issued checks to Usanga for "appreciation," "finder's fee," and "assistance" totaling approximately $18,000;[3] (4) Rooster and Mendus Medical used some of the same doctors in their schemes; and (5) on at least one occasion the two companies "swapped" Certificates of Medical Necessity ("CMN's").[4]

Our review of these facts and the record as a whole persuades us that the district court erred in determining that Ekanem entered into a jointly undertaken criminal activity regarding Mendus Medical.  At most, the evidence

---

[2] The Presentencing Report (PSR) originally recommended that Ekanem receive a 16-level enhancement based on the approximately $1.8 million of intended loss caused by Rooster. The district court found Ekanem responsible for an additional $1.7 million of intended loss caused by Mendus and thus added two more levels for a cumulative 18-level enhancement. This ultimately resulted in a total offense level of 32 and a Guidelines range of 121–151 months.

[3] Ekanem's attorney argued that the loss attributable to a "jointly undertaken criminal activity" was limited to the $18,000 worth of checks.  To the extent that this constitutes a concession, we simply note that an additional $18,000 would not have affected the recommended Guidelines range.

[4] The government also cites evidence that those "involved in this type of Medicare scheme would also pay each other in cash for fraudulent CMN's" and that Ekanem withdrew substantial amounts of cash from Rooster's accounts.  However, these facts alone do not speak to the relationship between Ekanem and Mendus Medical.

establishes that Usanga provided start-up and operational support to Rooster, for which Ekanem compensated Usanga with "appreciation" fees, and that Rooster and Mendus Medical ran similar schemes. However, there is no indication that Ekanem agreed to jointly undertake in the distinct business of Mendus Medical. There is no evidence that Ekanem assisted in the planning, provided material support, or shared in the profits of Mendus Medical. No payments were made from Mendus Medical to Ekanem. Moreover, the investigating agent specifically acknowledged that the government lacked any evidence that Ekanem was "in anyway responsible for the operation of Mendus or of Mr. Usanga."

Ekanem's mere awareness that Usanga was operating an identical fraudulent scheme is insufficient to hold Ekanem responsible for Usanga's actions. The Guidelines provide an apt illustration:

> Defendant R recruits Defendant S to distribute 500 grams of cocaine. Defendant S knows that Defendant R is the prime figure in a conspiracy involved in importing much larger quantities of cocaine. As long as Defendant S's agreement and conduct is limited to the distribution of the 500 grams, Defendant S is accountable only for that 500 gram amount . . . , rather than the much larger quantity imported by Defendant R.

§ 1B1.3, comment. (n.2, illus. (c)(7)). Like Defendant S in the above illustration, Ekanem clearly knew that Usanga was operating a fraudulent scheme through Mendus Medical. However, Ekanem's "agreement and conduct" appears limited to the activities of Rooster, which Usanga helped establish and support. Like Defendant S, there is no indication that Ekanem agreed to participate, support, or take a stake in the similar activities of Mendus Medical on an ongoing basis.

Accordingly, the district court's finding of relevant conduct was clearly erroneous. As this error led to a two-level increase in calculating the applicable Guidelines range, we vacate Ekanem's sentence and remand for resentencing.[5]

V

For the foregoing reasons, we AFFIRM Ekanem's convictions on all five counts of healthcare fraud in violation of 18 U.S.C. § 1347. Due to an error in calculating the appropriate Guidelines range, we VACATE the sentence and REMAND for resentencing.

---

[5] We note that, due to the district court's initial downward departure, Ekanem's original 120-month sentence is still within the properly calculated Guidelines range of 97–121 months. However, as we cannot "discern from the record whether the sentencing judge would have imposed the same sentence had he been departing from the [properly calculated] range," we are required to remand. United States v. Waskom, 179 F.3d 303, 312 (5th Cir. 1999). We express no opinion on whether 120 months remains an appropriate sentence, but we note that the amount of restitution imposed on Ekanem should be recalculated to exclude any losses attributable to Mendus Medical.