# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 7, 2012

No. 11-50946

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

JAMES TROY BROOKS,

Defendant – Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:11-CR-340-1

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

James Troy Brooks ("Brooks") appeals his sentence, alleging the district court committed procedural error in calculating his Guidelines range by applying a sentencing enhancement based on an amount of loss in excess of $70,000. He contends that the Government failed to prove by a preponderance of the evidence that several contested counterfeit checks are attributable to him as relevant conduct. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50946

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Brooks pleaded guilty, without a written agreement, to one count of conspiring to make, utter, and possess counterfeit checks and three counts of aiding and abetting the making, uttering, and possessing of counterfeit checks that were passed in March 2011. A search of Brooks's residence following his indictment and arrest revealed a personal computer containing images of bank logos, copies of authorization signatures, and a commercially-available software program used for producing commercial and payroll checks. The agents also discovered check stock paper and eight counterfeit checks totaling $6,186.52.

When pleading guilty, Brooks admitted only the facts alleged in connection with the three counts of aiding and abetting. These facts included a March 2011 visit to a day labor center in Austin, Texas, during which he enlisted three day-laborers to assist him in passing counterfeit checks. Brooks told the individuals he needed their help to "move items," but then drove the workers to his residence and used their government identifications to create counterfeit checks payable to them and written on the account of YCI South, LLC. After creating the counterfeit checks, Brooks drove these accomplice-payees to a Wal-Mart store where they successfully passed the checks. The Secret Service investigation revealed that Brooks used a similar modus operandi to pass ninety-seven counterfeit checks using fifty-eight separate payees between July 6, 2009, and May 11, 2011. The amount of these checks totaled $88,641.71.

Accordingly, the presentence report ("PSR") calculated the resulting amount of loss as $94,828.23, which includes (1) ninety-seven counterfeit checks that were passed and stated to be attributable to Brooks ($88,641.71) and (2) eight counterfeit checks discovered in his home ($6,186.52). The PSR calculated an offense level of seventeen, which included an eight-level enhancement to Brooks's base offense level of six because the amount of the actual loss exceeded $70,000. *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2B1.1(a)(2),

2

No. 11-50946

(b)(1)(E) (2010). In total, Brooks's offense level, criminal history category of VI, and certain adjustments resulted in an advisory Guidelines range of fifty-one to sixty-three months of imprisonment. Brooks objected to the PSR's amount-of-loss calculation, asserting that the Government did not establish his responsibility for a loss greater than $70,000 by a preponderance of the evidence.

The Government supplemented the PSR with a notebook containing a copy of each of the checks attributed to Brooks and accompanying affidavits verifying their counterfeit status. The Government provided this notebook to Brooks's attorney and introduced it at sentencing. Also during the sentencing hearing, the Government presented the testimony of Secret Service Agent Tracy Steed ("Agent Steed"). Based on his investigation, Agent Steed testified to the details linking Brooks to the ninety-seven counterfeit checks listed in the Government's exhibit. Brooks put forth no evidence to rebut the Government's proof, but instead argued that he had admitted only those facts associated with the three aiding and abetting charges. Because the conduct underlying these charges occurred only around March 2011, Brooks asserted that the evidence was insufficient to tie him to all ninety-seven checks, which involved conduct occurring from July 2009 to May 2011.

The district court rejected Brooks's objection to the amount-of-loss adjustment concluding that there was "no doubt" that Brooks's conduct during the relevant period resulted in a loss in excess of $70,000. After sustaining Brooks's objection to the sophisticated means enhancement, the court subsequently calculated an advisory Guidelines range of forty-one to fifty-one months of imprisonment, upwardly varied, and sentenced Brooks to sixty months on the conspiracy count and eighty-four months on each of the three aiding and abetting counts, to run concurrently. Brooks objected to the sentence as unreasonable, but his objection was overruled.

No. 11-50946

On appeal, Brooks effectively concedes checks totaling $34,531.35, which would support a six-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(D). Thus, we examine only the contested checks.

## II. STANDARD OF REVIEW

While we review a district court's method of calculating the amount of loss de novo, we review the underlying factual findings related to the amount of loss for clear error. *See, e.g.*, *United States v. Harris*, 597 F.3d 242, 250-51 & n.9 (5th Cir. 2010); *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009). The district court exercises "wide latitude to determine the amount of loss and should make a reasonable estimate based on available information." *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007) (citing *United States v. Cothran*, 302 F.3d 279, 287 (5th Cir. 2002)). Accordingly, no clear error exists so long as the district court's finding "is plausible in light of the record as a whole." *Ekanem*, 555 F.3d at 175 (internal quotation marks and citation omitted).

## III.  DISCUSSION

The Government must establish by a preponderance of the evidence that the amount-of-loss sentencing enhancement applies. *See United States v. Rodriguez*, 523 F.3d 519, 524 (5th Cir. 2008). Brooks argues the Government failed to meet this burden, and consequently that the district court committed a reversible procedural error by upwardly adjusting his base offense level by eight levels based on an amount of loss in excess of $70,000.[1]

Specific offense characteristics—such as whether the amount of loss exceeds $70,000—are based on the relevant conduct of the defendant. U.S.S.G.

---

[1] "Bald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." *United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993). However, here the Government supplemented the PSR's conclusions with additional evidence, including an affidavit from Agent Steed, Agent Steed's testimony during sentencing, and a detailed exhibit containing copies of all ninety-seven checks with supporting affidavits. Thus, we need not address the argument that the enhancement is supported by the PSR alone.

§ 1B1.3(a).  Relevant conduct includes all acts that the defendant committed or aided and abetted in the commission of the offense, U.S.S.G. § 1B1.3(a)(1)(A), as well as the "reasonably foreseeable acts and omissions of others" that occurred "in furtherance of [a] jointly undertaken criminal activity."    U.S.S.G. § 1B1.3(a)(1)(B).  Because Brooks's offenses involved § 2B1.1 and are grouped pursuant to § 3D1.2(d), relevant conduct also includes "all acts and omissions described in [§ 1B1.3(a)(1)(A)-(B), discussed] above[,] that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).  Actions fall within the "same course of conduct" when "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses."  U.S.S.G. § 1B1.3 cmt. n.9(B).  Determining whether offenses are sufficiently related involves considering "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."  *Id.*

When evaluating the actual loss associated with the relevant conduct, the district "court need only make a reasonable estimate of the loss" and its finding is "entitled to appropriate deference" because the "sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence."  U.S.S.G. § 2B1.1 cmt. n.3(C) (citing 18 U.S.C. § 3742(e) & (f)).

Brooks challenges sixty-six of the ninety-seven passed counterfeit checks attributed to him, arguing that the checks fall outside the scope of his criminal agreement and were not reasonably foreseeable by him in connection with the criminal activity he agreed to undertake.  These checks consist of four categories: (1) two checks written on the account of Satellite Healthcare; (2) nine checks written on the account of Colonial Gardens of Austin, Virginia College, LLC, Advanced Geosciences, Inc., and Acadian Ambulance Services; (3) twenty-one checks written on the account of Sonic Drive-In; and (4) thirty-four checks

written on the account of Relief Enterprises of Texas. In total, Brooks contests the district court's attribution of $60,297.08 of passed counterfeit checks to him. The evidence connected with each group of checks demonstrates that the district court did not commit any clear error in attributing these checks to Brooks as relevant conduct in its amount-of-loss calculation.

All of these checks were supported by testimony and the notebook exhibit described above to which no contrary evidence was proffered:[2]

*Satellite Healthcare*—Agent Steed testified that in November 2010, Brooks's accomplice, Natasha Walker, was caught attempting to pass a forged or counterfeit check written on the account of Satellite Healthcare at a grocery store in Austin, Texas. During this transaction, the Secret Service apprehended Brooks outside of the grocery store and discovered additional counterfeit Satellite Healthcare checks in Brooks's vehicle. Brooks admitted that he would approach people on the street and ask them to pass checks on his behalf.

*Colonial Gardens, et al.*—Agent Steed testified that during the course of one week, Brooks's accomplices cashed the checks in this group at the same Shell Express Food Market in Austin. The similarity of approach, the timing, and the relationship of the people to Brooks supported Agent Steed's testimony regarding this group of checks.

*Sonic Drive-In*—Agent Steed explained during the sentencing hearing that the counterfeit checks in this group are primarily linked to Brooks based on an investigation by the Austin Police Department ("APD") involving one of Brooks's

---

[2] Brooks asks us to consider the Guidelines' comment that indicates that it is inappropriate to hold a defendant liable for all sales made by a drug dealer when the defendant participates in the sale of drugs on a particular occasion without the intent to engage in ongoing criminal activity. *See* U.S.S.G. § 1B1.3 cmt. n.2(c)(5). The Government, however, does not base its claim that Brooks is liable for the ninety-seven checks on a common source or manufacturer, as would be required for this comment to apply, but instead relies on specific evidence—such as pointing to a common geographical region and similar modus operandi—to tie him to each check.

No. 11-50946

accomplice-payees, Alex Bunton. Agent Steed testified that Bunton told the APD in July 2009 that Brooks had recruited him to pass a counterfeit check written on the account of Ignite. Brooks pleaded guilty to conspiracy involving this check and does not object to its inclusion in the amount-of-loss calculation. Agent Steed testified that Bunton cooperated with the APD to obtain another counterfeit check from Brooks that was written on Sonic Drive-In's payroll account. This transaction plausibly ties him to the group of twenty-one Sonic Drive-In checks included in the amount-of-loss calculation because these checks were passed in Austin on July 18, 2009—the same month that Bunton received the counterfeit Sonic Drive-In check from Brooks and these checks were each written for approximately $900 payable to individuals who were not Sonic employees.

*Relief Enterprises*—As Agent Steed explained during his testimony, these checks were numbered relatively sequentially, cashed around the same time in July 2009, and written for approximately $900 each. The Government ties Brooks to these checks based on their similarity to the Sonic Drive-In checks. Specifically, all the checks from these two groups were payable for approximately $900 and were cashed in July 2009 in the Austin area, and eleven of the payees from the Sonic Drive-In checks were the same payees listed on the Relief Enterprises checks.

In the absence of any countervailing evidence, we conclude that the district court did not commit clear error in attributing the foregoing checks to Brooks and applying the eight-level enhancement. Accordingly, we AFFIRM Brooks's sentence.